FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

IN THE UNITED STATES DISTRICT COURT 2003 JAN 30 P 3: 22
FOR THE DISTRICT OF MARYLAND

CLERK'S OFFICE
AT BALTIMORE

_____DEPUTY

| | | |
|---|---|---|
| JULIA R. TYLER, *et al.* | * | |
| | * | |
| v. | * | Civil No. JFM-02-1975 |
| | * | |
| GAINES MOTOR LINES, INC. | * | |
| | * | |
| | ***** | |

## MEMORANDUM

Plaintiffs, Julia R. Tyler and Christopher Willis, filed suit in this court based on diversity

of citizenship seeking compensation for injuries sustained in a traffic accident that took place in

North Carolina. Gaines Motor Lines, Inc. ("Gaines"), a North Carolina corporation, owns the

tractor-trailer that allegedly caused the accident. Gaines has filed a motion to dismiss, or in the

alternative, to transfer the case to the Western District of North Carolina, based on lack of

personal jurisdiction in Maryland. For the reasons set forth below, I will grant defendant's

motion to transfer this case to the Western District of North Carolina.

I.

On August 3, 2000, plaintiffs Tyler and Willis were driving a vehicle that was struck by a

tractor-trailer owned by Gaines. The accident took place on North Carolina Route 191 in

Asheville, North Carolina. Both plaintiffs were working for the summer at the Pigsah Inn in

North Carolina, but provided identification documents indicating permanent residence in Florida.

After receiving initial medical treatment in North Carolina, plaintiffs eventually moved to

Maryland, where they continued to receive treatment for the injuries suffered in the crash.

Gaines is a motor carrier for hire authorized by the United States Department of

Transportation to operate in the forty-eight continental states. It is regularly engaged in the transportation of textiles along the eastern seaboard, having terminals in the Carolinas, Virginia, Rhode Island, and New Jersey. Gaines's trucks frequently travel through Maryland, but it has only two customers within the state. It characterizes the pickups and deliveries for these two customers to be sporadic in nature and relatively insignificant, averaging 1.5 pickups/deliveries per week over the year (out of 3400 pickups/deliveries accomplished per week by Gaines). Gaines avers that it does not actively pursue business within Maryland.[1]

Gaines did, however, log 119,000 miles on the highways of Maryland in 2000 and 126,000 miles in 2001 (out of 9,944,951 total miles and 10,877,851 total miles for those years respectively). Gaines is not registered to do business within the State of Maryland, but has a registered agent for service of process pursuant to its operating authority under federal law and U.S. Department of Transportation regulations. Gaines does not purchase fuel permits from or pay fuel tax directly to Maryland, nor does it register or garage any of its equipment within the state. Finally, Gaines has no employees within the State of Maryland.

II.

Personal jurisdiction over the defendant for an out-of-state tort claim must be established by the state's long-arm statute and comport with the constitutional requirements of due process. *See Blue Ridge Bank v. Veribanc, Inc.*, 755 F.2d 371, 373 (4th Cir. 1985). Because Maryland's

---

[1] Plaintiffs dispute this claim. A private investigator working for the plaintiffs, portraying himself as a potential new client, managed to get Gaines sales representatives to affirm they would be willing to transport goods from Maryland. Gaines, however, did not solicit this business. Thus, it does not prove Gaines actively pursues business in the state. Moreover, a minimum contacts analysis is based on current contacts, not potential future ones.

long-arm statute has been construed as co-extensive with the parameters of the Due Process

Clause of the Fourteenth Amendment, the inquiries meld into one. *See Ellicott Machine Corp. v.*

*John Holland Party Ltd.*, 995 F.2d 474, 477 (4th Cir. 1993); *Geelhoed v. Jensen*, 352 A.2d 818,

821 (Md. 1976) (construing Maryland's long-arm statute). Absent the defendant's consent, a

Maryland court has personal jurisdiction over a defendant who is or may be considered present

within the state. *See ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 711 (4th

Cir. 2002) (explaining the terms 'present' and 'presence' are used merely to symbolize those

activities of a corporation which will be sufficient to satisfy the demands of due process); *ESAB

Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 623 (4th Cir. 1997) (explaining the minimum

contacts analysis has developed as a surrogate for presence).

Under *International Shoe* and its progeny, a corporate defendant may be considered

"present" if the corporation has purposively directed its activities toward the state and it has

minimum contacts with the state sufficient to allow the exercise of jurisdiction to comport with

"traditional notions of fairplay and substantial justice." *See International Shoe Co. v.

Washington*, 326 U.S. 310, 316 (1945). While one contact with the forum state may suffice to

maintain personal jurisdiction over a defendant on a claim specifically related to that contact, the

contacts must be extensive, continuous, and systematic in order to exercise general personal

jurisdiction – jurisdiction for a claim unrelated to those contacts. *See Helicopteros Nacionales

de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984); *Ratliff v. Cooper Lab., Inc.*, 444 F.2d 745,

748 (4th Cir. 1971). Because the tort claim at issue in this case is unrelated to the defendant's

ties to Maryland, the question is whether Gaines has sufficient contacts with the State of

Maryland to exercise general jurisdiction over the corporation.

Plaintiffs contend that Gaines has consented to jurisdiction in Maryland by having a registered agent for service of process and that a "minimum contacts" analysis is therefore not necessary. Plaintiffs rest their consent argument upon Eighth Circuit case law and the fact that defendant has appointed a Maryland Resident Agent for service of process pursuant to federal law. *See* 49 U.S.C. § 13304(a); *Ocepek v. Corporate Transport, Inc.*, 950 F.2d 556 (8th Cir. 1991) (holding the designation of an agent for service of process under the Interstate Commerce Act provides the necessary consent to assert jurisdiction).

The controlling law, however, does not support plaintiffs' position. *See Ratliff v. Cooper Lab., Inc.*, 444 F.2d 745, 748 (4th Cir. 1971) (noting "the application to do business and the appointment of an agent for service to fulfill a state law requirement is of no special weight in the present context").[2] More recently, other circuits have similarly rejected the notion that appointing a registered agent is sufficient to establish general personal jurisdiction over a corporation. *See Consolidated Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1293 (11th Cir. 2000) (holding the lower court could not assert jurisdiction over a foreign corporation based on appointment of an agent); *Wenche Siemer v. Learjet Acquisition Corp.*, 966 F.2d 179, 181-82 (5th Cir. 1992) (analogizing to *Ratliff*). Gaines's designation of an agent for service of process pursuant to the Interstate Commerce Act does not provide the "consent" of the corporation to be sued in the State of Maryland for a matter unrelated to its contacts with the state. I will consider Gaines's appointment of an agent as part of the minimum contacts analysis. I will not, however, accord it any special weight.

---

[2] Though *Ratliff* did not involve a motor carrier or the Interstate Commerce Act, the point it addresses is the same.

4

The more difficult question is whether Gaines has sufficient contacts with the state so that assertion of jurisdiction comports with traditional notions of fairplay and substantial justice. *See Atlantech Distrib., Inc. v. Credit General Ins. Co.*, 30 F. Supp. 2d 534, 536 (D. Md. 1998) (recognizing that courts typically only exercise general jurisdiction over nonresidents who are "essentially domiciled" within the forum state)  Both sides point to cases with similar factual predicates to support their respective positions. *Compare Obermeyer v. Gilliland,* 873 F. Supp. 153, 157-58 (C.D. Ill. 1995) (holding no general personal jurisdiction over a truck driver who regularly made deliveries in the forum state), *and Maroshek v. East Penn Trucking Co.*, No. 92-27-SSH, 1992 WL 101621 (D.D.C. Apr. 29, 1992) (holding that jurisdiction based on designation of an agent for service and a handful of deliveries in the forum state would conflict with traditional notions of fairplay and substantial justice), *with Domingo v. Paul,* No. HAR-92-686, 1992 WL 333842, at *14 (D. Md. Nov. 5, 1992) (holding assertion of personal jurisdiction over trucking company constitutional), *and Carter v. Massey*, 436 F. Supp. 29, 34 (D. Md. 1977) (holding assertion of personal jurisdiction over trucking company and truck driver constitutional because both personally traveled in Maryland frequently, on a regular basis, in a purposeful way, and in a manner integral to their respective businesses).

In the most clearly analogous case, *Domingo*, the court held it could exercise general personal jurisdiction over a motor carrier. *See Domingo,* 1992 WL 333842, at *15. The motor carrier in *Domingo* was sued in federal court in Maryland for injuries sustained during an accident that took place in New Jersey. *See id.* at *1. The defendant had appointed an agent for service of process and averaged 2.5 delivery trips per month to service customers in Maryland,

5

but did most of its business in other states.[3] *See id.* at \*14. Though the defendant attempted to portray its deliveries within Maryland as "unscheduled" and "sporadic," the court noted that the low percentage of the overall business of the company represented by its business within Maryland did not "diminish the factual magnitude of its connections" with the state. *Id.* at \*14-15. Finding that the defendant motor carrier had "regularly taken advantage of the laws, police protection and infrastructure of Maryland," the court held it would not be unfair or unconstitutional to require the defendant to respond to suit in Maryland for an out-of-state tort. *Id.* at \*14.

Since *Domingo*, however, the Fourth Circuit has made clear that "broad constructions of general jurisdiction should be generally disfavored." *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1200 (4th Cir. 1993). The defendant in *Nichols*, G.D. Searle & Company ("Searle"), was a pharmaceutical company that maintained no office in Maryland and never manufactured products in the state. *See id.* at 1198. Searle employed 17-21 people within Maryland as "detail" and consumer product representatives. *See id.* These employees drove company cars registered in Maryland and promoted the company's products to physicians, hospitals, wholesalers, and retailers. *See id.* As a result, Searle had annual sales of $9,000,000 - $13,000,000 in Maryland for five years prior to the litigation. *See id.* In addition, the company held several meetings within the state to organize the efforts of its local, regional, and national promotional staff. *See id.*

---

[3] As pointed out by the defendant in this case, the facts of *Domingo* are indistinguishable from those presented here. In fact, the defendant in *Domingo* had less contacts with the State of Maryland than does Gaines – Gaines averages 6.0 deliveries/pickups in Maryland per month.

The Fourth Circuit held that general personal jurisdiction could not be asserted. *See id.* at 1200. Even though Searle had contacts with the forum state that were both systematic and continuous, these contacts were not substantial enough to justify the exercise of general jurisdiction. *See id.* Relying heavily on the *Ratliff* decision, the court stated that "advertising and solicitation activities alone do not constitute the 'minimum contacts' required for general jurisdiction." *Id.* Because most of Searle's contacts with the state, including its employment of Maryland residents and the registration of vehicles for those employees' use, were in support of its promotional activities, they fell within the scope of the *Ratliff* rule. *See id.* Searle's other contacts with Maryland, such as holding meetings and making purchases, were "too insignificant" to sustain jurisdiction. *See id.*

*Nichols* calls into question the validity of the holding in *Domingo* and makes this case a closer question. While Gaines's contacts with Maryland could not be described as promotional activities, the activities are of a less substantial nature than those found insufficient in *Nichols*. With only two customers in Maryland and no employees, Gaines has much less contact with the state than Searle did.[4] Overall, *Nichols* and the unfavorable light it casts upon broad constructions of general jurisdiction make it difficult to find that general *in personam* jurisdiction can be maintained over Gaines in Maryland.

---

[4] Plaintiffs attempt to hinge jurisdiction on the thousands of miles logged by Gaines's drivers as they traverse the state on the way to other jurisdictions. Yet the *Nichols* court found it insignificant that Searle registered vehicles it owned with the State of Maryland and presumably had its employees logging thousands of miles servicing Searle's customers within the state. Moreover, the Fourth Circuit did not mention the utilization of infrastructure or the protection of the laws Searle's activities must have required; such considerations must, therefore, be nearly inconsequential in assessing general jurisdiction.

Because the question is a close one, I will exercise my discretion to transfer this case in the interests of justice. *See* 28 U.S.C. § 1404. For me to hold that Gaines is subject to personal jurisdiction would inject into the case an unnecessary legal issue that would render the entire litigation null and void if, on appeal, jurisdiction were found to be lacking. *See Howard v. First Value Homes*, No. JFM-00-2151, 2000 WL 1481643, at *2 (D. Md. Aug. 17, 2000). "Under similar circumstances I have found the transfer to a district in which the action could have been brought to be the appropriate remedy." *Id.; see also The Harry & Jeanette Weinberg Found. Inc. v. ANB Inv. Mgmt. & Trust Co.*, 966 F. Supp. 389, 392 (D. Md. 1997); *Joseph M. Coleman & Assoc. v. Colonial Metals*, 887 F. Supp. 116, 120 (D. Md. 1995). Jurisdiction in the Western District of North Carolina, where the accident took place (and Gaines is incorporated and has a terminal) clearly would be proper. Accordingly, I will enter an order of transfer to that court.

A separate order is being entered herewith.


Date: *January 3d, 2003*


_____
J. Frederick Motz
United States District Judge

8